**AJA ASSOCIATES, Appellee,**

v.

**ARMY CORPS OF ENGINEERS and Charles T. Myers, III, Appellants.**

**No. 86–1377.**

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1987.

Decided May 5, 1987.

F. Henry Habicht II, Asst. Atty. Gen., Edward S.G. Dennis, Jr., U.S. Atty., Cynthia J. Giles, Asst. U.S. Atty., Philadelphia, Pa., David C. Shilton, Bonnie A. Sullivan, Jacques B. Gelin (argued), Attys., Dept. of Justice, Charles A. Openchowski, Office of the Chief Counsel, U.S. Army Corps of Engineers, Washington, D.C. for federal appellants.

Albert A. Ciardi, Jr., Keith N. Leonard (argued), Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM and STAPLETON, Circuit Judges, and RODRIGUEZ, District Judge.*

**OPINION OF THE COURT**

STAPLETON, Circuit Judge:

The Army Corps of Engineers ("the Corps") appeals from the district court's remand order concerning an application for a dredge-and-fill permit by AJA Associates ("AJA"). Because the applicant has already been given the meaningful opportunity to be heard that due process requires,

---

* Honorable Joseph H. Rodriguez, United States District Judge for the District of New Jersey, sitting by designation.

we conclude that the district court erred in remanding to the Corps for "an informal oral hearing." Accordingly, we will instruct the district court to vacate its remand order and consider AJA's remaining assertions of impropriety in the processing of its application.

## I.

AJA owns property on a canal in Key Colony Beach, Florida. On September 21, 1983, the prior owner of AJA's lot, Glen Cafferty, filed an application with the Corps for a permit to construct a seawall (or "bulkhead"), to backfill behind the seawall, and to dredge the base of the seawall. These activities require a permit under § 404 of the Clean Water Act, 33 U.S.C. § 1344 (1986), and § 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403 (1986). The Jacksonville District of the Corps published a notice describing the application on November 2, 1984. Consideration of the application, number 84R–4588, had been delayed by the Corps until that time because it was negotiating with the City of Key Colony Beach to secure modification of a city ordinance that required seawall construction in the manner presented in the application.

On November 27, 1984, a Corps Area Engineer submitted a report that considered this permit application along with 15 other similar proposals for the construction of bulkheads. The report concluded with respect to application 84R–4588: "Recommend bulkhead be placed at landward edge of wetland zone and a pile supported pier for boat access. Recommend no dredging waterward of bulkhead line." Record at 51. Thus the report did not support construction of the seawall as proposed.

In response to the public notice, the Environmental Protection Agency, the Fish and Wildlife Service of the Department of the Interior, and the National Marine Fisheries Service of the National Oceanic and Atmospheric Administration submitted comments. Each agency recommended denial of the AJA permit application as well as denial of permits for the 15 other similar

projects under consideration. The EPA comment, for example, describes the wetlands at issue in the permit applications as "a valuable public resource." Wetlands provide "fish and wildlife habitat, hydrological buffering, shoreline stabilization, water purification, pollution and erosion traps, and food chain production." According to the EPA, "[a]lthough the proposed projects would impact only a relatively small area of wetlands, the cumulative effects of many such projects would have a devastating impact on the wetland resources of the Florida Keys." Record at 67.

Albert Ciardi, a principal in the AJA partnership, then received a letter from an official in the Corps Permit Section dated February 5, 1985, and addressed to Glen Boe, the manager who had actually submitted the permit application for the AJA lot. The letter requested a written response from the applicant addressing the three agency reports that had recommended denial of the application; copies of the three reports were sent along with the letter. In addition to addressing the agency reports, the Corps letter directed the applicant to provide a discussion of (1) the public and private need for the project, (2) why the proposed fill must be located in the wetland resource, and (3) alternative plans that have been considered and why the alternatives are not feasible.

Ciardi's response states that the private need "is so that I can construct a home." The public need "is that the project be constructed safely and that a monstrous pier not jut out in the middle of the waterway which can be dangerous to boat traffic." Ciardi wrote that the seawall must be located in the wetland resource "[b]ecause that is where it is." He stated that he had not considered an alternative site "because I have spent good money for this site; ergo, it would not be feasible to spend money for another site." Record at 86. Ciardi also wrote:

> Having this information in your possession, why don't you deny the permit so that we can take the matter before the courts and let a Judge make a decision that will determine once and for all the

wisdom of your denial of a permit on a lot which is totally enclosed by two (2) built-up lots with bulkheads on a lagoon which has been in existence for many years without any significant environmental impact whatsoever.

Record at 87. Glen Boe submitted a five-page response to the agency reports, but began with the statement:

The issues surrounding the applications in question, as you well know, have been discussed at great and tedious length for at least a decade. It is difficult to believe that you really want to rehash the hours of discussions, letters, arguments, contentions, inspections, claims, counterclaims, allegations, opinions, suggestions, demands and lamentations that have spewed forth for lo these many years.

Record at 88. A July 30, 1985, letter from Ciardi to the Corps of Engineers complained about the length of time the application process was taking. Ciardi stated, "I am commencing with the construction of my seawall. See you in court!" Record at 119. In all, Ciardi wrote four threatening letters to the Corps. *See* Record at 86–87, 101–02, 104, 118–19.

On August 5, 1985, the Corps completed its evaluation of the permit application and notified Ciardi that it would not grant a permit. The Corps had prepared a seven-page "Statement of Findings on 84R–4588" for the administrative record. Ciardi apparently received a copy of this statement, which summarized all the information before the Corps and the basis for its decision, along with his notice of permit denial. The Corps found Ciardi's proposed project "not in compliance with the Corps wetland policy since the area to be filled is considered a vital wetland that constitutes a valuable and productive public resource." The Corps also concluded that the project was "not in accordance with the 404(b)(1) guidelines since practical alternatives are available for shoreline protection." The permit was denied because the proposed work "would have an unacceptable adverse impact on an important public resource by destroying wetland vegetation and productive seagrasses." Record at 127. The no-

tice to Ciardi, signed by Colonel Charles Myers of the Corps, stated, "I have evaluated your application and the cumulative impacts of permitting many other such applications in the city of Key Colony Beach and have determined there would be an adverse cumulative impact on the environment if these permits were issued." Record at 128.

On September 4, 1985, AJA filed suit in district court, seeking to set aside the permit denial. AJA asserted that the Corps' action was arbitrary and thus not in accordance with law, and that the Corps unlawfully delayed evaluation of the permit application. Nowhere in the complaint did AJA assert that the Corps should have held a hearing as a part of its decisionmaking process.

The Corps on January 13, 1986, filed a motion for summary judgment and a motion for a protective order to prevent the deposition of Colonel Myers. In opposition to the motion for summary judgment, AJA argued for the first time that procedural due process required an adjudicatory hearing during the Corps' review of AJA's application. AJA also argued, as asserted in the complaint, that the Corps had erred in taking an unreasonable amount of time to process the application and in considering the environmental impact of AJA's application together with the 15 other similar proposals before the Corps. In a memorandum opinion dated June 12, 1986, Judge Weiner denied the Corps' motions and remanded the case for an administrative hearing. The district court held that "plaintiff is entitled to appear at an informal oral hearing before a proper agency officer so that plaintiff can hear and respond to reasons why its individual permit application (84R–4588) was denied by the Army Corps of Engineers." Judge Weiner stressed, "We do not hold, however, that due process requires an informal oral hearing in every application before defendant." Mem.Op. at 5.

## II.

▪ Before considering the merits of this appeal, we must determine whether

the court has appellate jurisdiction under 28 U.S.C. § 1291 to review the remand order presented here. "[R]emands to administrative agencies are not ordinarily appealable under section 1291." *United Steelworkers of America, Local 1913 v. Union Railroad Co.,* 648 F.2d 905, 909 (3d Cir.1981). Nevertheless, *Union Railroad* and *Horizons International, Inc. v. Baldridge,* 811 F.2d 154 (3d Cir.1987), recognize that when a district court finally resolves an important legal issue in reviewing an administrative agency action and denial of appellate review before remand to the agency would foreclose appellate review as a practical matter, the remand order is immediately appealable.

The present appeal challenges a remand order based on the district court's analysis of due process requirements in a dredge-and-fill permit proceeding. The district court has resolved an issue of wide-reaching impact, even though the lower court carefully confined its decision to the facts of this case. The decision opens up for all applicants the argument, raised after permit denial, that due process requires a hearing in their particular cases. This important decision cannot receive later appellate review. If on remand the Corps grants AJA a permit, the case will never return to the courts. If the Corps again denies the permit after a hearing, judicial review sought by AJA will not allow consideration of the right-to-hearing issue, because the issue will have become moot. We conclude that the appeal presents a final order within the meaning of 28 U.S.C. § 1291 as it has been interpreted in this circuit.

### III.

"The fundamental requirement of due process is the *opportunity* to be heard 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (emphasis added). In this case, AJA took advantage of its opportunity to advance arguments in support of its permit application through written submissions to the Corps. The issue now, after the permit has been denied, is whether due process requires remand for an informal oral hearing even though AJA did not take advantage of its opportunity during the comment period to request an oral hearing. Due process does not so require; a permit applicant cannot lay blame on an agency for the applicant's own failure to pursue every available channel of advocacy.

The regulation governing hearings to consider dredge-and-fill permit applications states:

> Unless the public notice specifies that a public hearing will be held, [which in this case the notice did not,] any person may request, in writing, within the comment period specified in the public notice on a Department of the Army permit application or on a Federal project, that a public hearing be held to consider the material matters in issue in the permit application or Federal project. Upon receipt of any such request, stating with particularity the reasons for holding a public hearing, the district engineer may expeditiously attempt to resolve the issues informally. Otherwise, he shall promptly set a time and place for the public hearing and give due notice thereof.... Requests for a public hearing under this paragraph shall be granted, unless the district engineer determines that the issues raised are insubstantial or there is otherwise no valid interest to be served by a hearing. The district engineer will make such a determination in writing, and communicate his reasons therefor to all requesting parties.

33 C.F.R. § 327.4(b). AJA did not submit a request for a hearing during the comment period. Indeed, throughout the period prior to the Corps' decision to deny the permit, AJA pressured the Corps for a speedy resolution of its application. Only after it had filed the complaint in this case did AJA first advance the claim that it needed a face-to-face meeting with Corps officials.

It has long been routine for administrative agencies to require a request for a hearing before holding a hearing on an application

under consideration by the agency. Such a request requirement has survived numerous due process challenges. For example, in *Goldsmith v. Board of Tax Appeals,* 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926), the Supreme Court rejected Goldsmith's argument, after he was denied admission to practice before the Board, that due process "entitled petitioner to be heard before an opportunity to make a living in his profession was taken away from him." 270 U.S. at 118, 46 S.Ct. at 216 (summary of Goldsmith's argument before the Court). Goldsmith had not demanded from the Board the right to be heard on the charges against him that eventually resulted in denial of admission to practice. The Court concluded that "[u]ntil he had sought a hearing from the Board, and been denied it, he could not appeal to the courts for any remedy and certainly not for mandamus to compel enrollment." 270 U.S. at 123, 46 S.Ct. at 217.

Moreover, the Supreme Court has upheld agencies' requirements, prior to providing a hearing, that an applicant not only request a hearing, but also present reasons why a hearing would be useful. *See, e.g., Castle v. Pacific Legal Foundation,* 445 U.S. 198, 100 S.Ct. 1095, 63 L.Ed.2d 329 (1980); *Weinberger v. Hyson, Westcott & Dunning,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973). In *Hyson, Westcott & Dunning,* the Court held that the FDA's decision, articulated in its regulations, "that it will not provide a formal hearing where it is apparent at the threshold that the applicant has not tendered *any* evidence which *on its face* meets the statutory standards [for a new drug application]" did not violate due process protections. 412 U.S. at 620–21, 93 S.Ct. at 2478–79. (emphasis in original)

AJA acknowledges that 33 C.F.R. § 327 governs the processing of its permit application. *See* Appellee's Brief at 4. Despite obfuscation in the brief submitted to this court, AJA's counsel at oral argument admitted that no hearing had been requested, either in writing or orally, prior to the Corps' decision to deny the dredge-and-fill permit. AJA offers no extenuating circumstance as a possible basis for ignoring the regulation's requirement of a request before a hearing will be held. AJA can cite no case granting a permit applicant an administrative hearing on due process grounds where the applicant gave no indication it desired or needed a hearing during the time when the agency was considering its application. As numerous prior decisions have held, we hold that the administrative agency here may, in keeping with due process, condition a hearing upon a request for one. The Corps gave AJA several meaningful opportunities to be heard. The applicant chose to submit its application for decision based upon a detailed "paper hearing" and cannot now complain that this process was inadequate.

### IV.

For reasons of institutional integrity, we will, in addition to instructing the district court to vacate its remand order, return the case to the lower court for consideration of AJA's other assertions of error by the Corps. We note, however, that the papers submitted to this court indicate that AJA's remaining arguments may also be meritless, and resolution of the case on a motion for summary judgment may be appropriate.