

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-27-1999

# Kreider Dairy Farms, Inc. v. Glickman

Precedential or Non-Precedential:

Docket 98-1906, 981982,98-1983

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Kreider Dairy Farms, Inc. v. Glickman" (1999). *1999 Decisions.* Paper 240.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/240

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 27, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1906, 98-1982 and 98-1983

KREIDER DAIRY FARMS, INC.,
a Pennsylvania Family Farm Corporation

v.

DAN GLICKMAN, Secretary of the United
States Department of Agriculture

Dan Glickman,
        Appellant in No. 98-1906
(D.C. 98-cv-00518)

KREIDER DAIRY FARMS, INC.,
a Pennsylvania Family Farm Corporation

v.

DAN GLICKMAN, Secretary of the United
States Department of Agriculture;

AHAVA DAIRY PRODUCTS, INC.

Kreider Dairy Farms, Inc.,
        Appellant in No. 98-1982
(D.C. 95-cv-06648)

KREIDER DAIRY FARMS, INC.,
a Pennsylvania Family Farm Corporation

v.

DAN GLICKMAN, Secretary of the United
States Department of Agriculture

Kreider Dairy Farms, Inc.,
        Appellant in No. 98-1983
(D.C. 98-cv-00518)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Judge: Honorable Edward N. Cahn

ARGUED: June 9, 1999

Before: SLOVITER and MANSMANN, Circuit Judges,
and WARD,* District Judge.

(Filed: August 27, 1999)

       Marvin Beshore, Esquire (ARGUED)
       Dawn L. Lisi, Esquire
       Milspaw & Beshore
       130 State Street
       P.O. Box 946
       Harrisburg, PA 17108-0946

        COUNSEL FOR KREIDER
        DAIRY FARMS

       David W. Ogden, Esquire
       Acting Assistant Attorney General

       Michael R. Stiles, Esquire
       United States Attorney

       Barbara C. Biddle, Esquire
       United States Department of Justice
       Civil Division, Appellate Staff
       10th & Pennsylvania Avenue, N.W.
       Washington, D.C. 20530-0001

       Michael E. Robinson, Esquire
       United States Department of Justice
       Appellate Section
       950 Pennsylvania Avenue, N.W.
       Washington, D.C. 20530
_____

*Honorable Robert J. Ward, United States District Judge for the
Southern District of New York, sitting by designation.

Douglas Hallward–Driemeier, Esquire
 (ARGUED)
United States Department of Justice
Civil Division, Appellate Staff
601 D Street, N.W.
Washington, D.C. 20530–0001

 COUNSEL FOR UNITED STATES
 DEPARTMENT OF AGRICULTURE

OPINION OF THE COURT

MANSMANN, Circuit Judge.

These appeals implicate important issues related to our appellate jurisdiction in the context of a dispute over dairy regulations. Specifically, we must determine the extent to which our jurisdiction extends to District Court orders remanding for further factual findings in administrative proceedings in light of Forney v. Apfel, 524 U.S. 266, 118 S. Ct. 1984 (1998). We hold today that because the discussion on appellate jurisdiction in Forney is founded upon specific language located within the Social Security Act, the holding in Forney does not extend to all District Court orders remanding for further administrative proceedings. We also reaffirm our longstanding rule that we lack jurisdiction over District Court orders remanding for further administrative findings unless an important legal issue has been finally determined which would evade appellate review in the absence of an immediate appeal.

Applying these principles to the appeals before us, we find that we lack jurisdiction over the appealfiled by Kreider Dairy Farm, Inc. ("Kreider") in 1998 from a 1996 District Court order which remanded for further factual findings relating to the merits of the dairy dispute. Accordingly, we will dismiss Kreider's appeal (No. 98–1982) for lack of jurisdiction. Under these same principles, however, we find that we do have appellate jurisdiction over the timely appeal filed by the Secretary of the United States Department of Agriculture ("USDA") from the District Court's August 10, 1998 order reversing a USDA

3

determination that Kreider's administrative appeal on remand was untimely (No. 98-1906) and remanding for further administrative proceedings on the merits.

With respect to the merits of the USDA's appeal, we hold that the District Court erred in exercising jurisdiction over Kreider's appeal and accordingly will vacate the District Court's 1998 Order. Finally, we will dismiss summarily Kreider's "cross-appeal" from the District Court's August 10, 1998 order (No. 98-1983) as Kreider has informed us that it never intended to cross-appeal from that order and has not pursued that cross-appeal in its briefing or at oral argument before us.

I.

These appeals come to us after a long and tortured procedural history that spans nearly a decade. Because this procedural history is central to our decision, we shall discuss it in some detail. By contrast, because we do not reach the merits of the parties' dispute over the dairy regulations at issue in these appeals, the underlying factual background that forms the basis of that dispute will be discussed only generally.[1]

A.

Kreider is a dairy farm corporation that produces and distributes packaged kosher fluid milk within the New York-New Jersey milk marketing area with the aid of two independent subdistributors. The production and sale of milk within the New York-New Jersey milk marketing area is regulated by Order 2 which was promulgated under the Agricultural Marketing Agreement Act of 1937 ("AMAA"), 7 U.S.C. S 601 et seq. Under Order 2, certain milk producers can qualify for producer-handler status which entitles them to an exemption from paying certain fees in connection with

_____

1. For a more detailed discussion of the merits of the dairy regulation dispute see Kreider Dairy Farms, Inc. v. Glickman, No. Civ. A. 95-6648, 1996 WL 472414 (E.D. Pa. August 15, 1996); In re: Kreider Dairy Farms, Inc., 94 AMA Docket No. M-1-2, 1995 WL 598331 (U.S.D.A. September 28, 1995).

4

the sales of milk. Kreider first applied for producer–handler status under Order 2 by letter dated December 19, 1990.

The Market Administrator ("MA") responsible for administering Order 2 denied Kreider's application for producer–handler status, finding that Kreider did not meet the producer–handler requirements due to Kreider's use of independent subdistributors. See generally 7 C.F.R. S 1002.12(b)(1999) (setting forth exclusive control requirements for producer–handler exemption). On December 23, 1993, Kreider challenged the MA's decision by filing a petition with the USDA pursuant to section 608c(15)(A) of the AMAA.

After a December 14, 1994 hearing, an Administrative Law Judge ("ALJ") issued a decision holding that Kreider was entitled to producer–handler status under Order 2. The Agricultural Marketing Service appealed to a Judicial Officer ("JO") of the USDA, who acts on behalf of the Secretary of Agriculture in all adjudicative matters. See 7 C.F.R. S 2.35 (1999). The JO reversed the ALJ's decision, holding that Kreider was not entitled to producer–handler status. See In re: Kreider Dairy Farms, Inc., 94 AMA Docket No. M–1–2, 1995 WL 598331 (U.S.D.A. September 28, 1995).

On October 18, 1995, Kreider filed a complaint pursuant to the AMAA in the District Court challenging the JO's decision. See AMAA, 7 U.S.C. S 608c(15)(B)(1994). By opinion and order filed August 15, 1996 ("1996 Order"), the District Court denied the parties' cross motions for summary judgment and remanded for further administrative findings on whether Kreider was "riding the pool," i.e., whether Kreider was the type of dairy for which producer–handler status should be denied pursuant to the promulgation history of the producer–handler exemption. See Kreider Dairy Farms, Inc. v. Glickman, No. Civ. A. 95–6648, 1996 WL 472414 (E.D. Pa. August 15, 1996). Neither Kreider nor the USDA appealed the District Court's 1996 Order at that time.

B.

On remand, the ALJ held a hearing and issued a decision on August 12, 1997 holding that Kreider was "riding the

5

pool" and therefore was not entitled to producer-handler status. Under applicable regulations, the ALJ's decision becomes effective thirty-five (35) days after service upon the parties unless appealed to the JO thirty days (30) after service. See 7 C.F.R. SS 900.64(c), 900.65(a)(1999). The ALJ's decision was served on Kreider on August 15, 1997.

On September 12, 1997, Kreider moved for an extension of time to file its appeal from the ALJ's August 12, 1997 decision. The JO granted Kreider an extension until September 19, 1997. On September 19, 1997, Kreider sent its appeal via Federal Express next day delivery. The Office of the Hearing Clerk stamped Kreider's appeal as received on September 25, 1997.

On January 12, 1998, the JO issued an opinion denying Kreider's administrative appeal as untimely because, under applicable regulations, an administrative appeal is deemed to be filed "when it is postmarked, or when it is received by the hearing clerk." 7 C.F.R. S 900.69(d)(1999). The JO held that because the term "postmarked" requires a United States Postal Service postmark, a date label generated by Federal Express does not toll the appeal period. See In re: Kreider Dairy Farms, Inc., No. 94 AMA Docket No. M-1-2, 1998 WL 25746, at *8 (U.S.D.A. January 12, 1998). Kreider filed a timely motion for reconsideration.

While Kreider's motion for reconsideration was pending before the JO, Kreider filed a complaint with the District Court on February 2, 1998 challenging the ALJ's August 12, 1997 decision and noting that the JO had denied its appeal as untimely.[2] The JO denied Kreider's motion for

_____

2. An appeal to the District Court must be taken within twenty days of the entry of the administrative decision. See 7 U.S.C.A. S 608c(15)(B)(1994). If Kreider had filed a complaint on February 2, 1998 challenging the JO's January 12, 1998 decision rather than a motion for reconsideration, Kreider's February 2, 1998 complaint would have constituted a timely appeal of that decision because the twentieth day after entry, February 1, 1998, fell on a Sunday. As Kreider conceded before the District Court, however, the District Court lacked jurisdiction over Kreider's February 2, 1998 complaint challenging the ALJ's August 12, 1997 decision because that decision was not afinal administrative determination. See Kreider, 1998 WL 481926 at *7; see also 7 C.F.R. S 900.64(c)(1999)(stating that no decision isfinal for purposes of judicial
review except a final decision issued by the Secretary pursuant to an appeal by a party to the ALJ proceeding).

6

reconsideration on February 20, 1998. On April 3, 1998, Kreider filed an amended complaint challenging the JO's January 12, 1998 and February 20, 1998 decisions. The USDA filed a motion to dismiss.

By opinion and order entered August 10, 1998 ("1998 Order"), the District Court denied the USDA's motion to dismiss, vacated the JO's January 12, 1998 and February 20, 1998 decisions, and remanded for the JO to consider the merits of Kreider's appeal of the ALJ's August 12, 1997 decision. See Kreider Dairy Farms, Inc. v. Glickman, No. 98-518, 1998 WL 481926 (E.D. Pa. August 10, 1998). The District Court held that because Kreider's April 3, 1998 amended complaint challenging the JO's decisions related back to Kreider's initial complaint filed on February 2, 1998, Kreider's appeal of the JO's January 12, 1998 decision was timely. The District Court further determined that because the JO erred in holding that a United States postmark was required under applicable regulations, Kreider's appeal to the JO from the ALJ's decision was timely and should have been considered by the JO. The District Court accordingly entered the 1998 Order remanding for the JO to consider the merits of Kreider's appeal from the ALJ's determination that Kreider was riding the pool and therefore was not entitled to producer-handler status.

C.

On October 7, 1998, the USDA filed a timely appeal from the District Court's 1998 Order which was docketed with us at 98-1906. On October 21, 1998, Kreider filed a cross-appeal. In Kreider's notice of appeal, Kreider listed the docket numbers from the District Court's two prior proceedings hoping to bring an appeal from the District Court's 1996 Order. Kreider's cross-appeal was treated as two separate appeals: 1) a cross-appeal from the District Court's 1998 Order (docketed at 98-1983); and 2) an appeal from the District Court's 1996 Order (docketed at 98-1982).

On October 30, 1998, we sent a letter to the parties questioning our jurisdiction over Kreider's appeal from the District Court's 1996 Order. We invited submissions by the

parties outlining the basis for our jurisdiction. Both parties submitted letters. In its letter, the USDA contends that we have jurisdiction over Kreider's appeal from the District Court's 1996 Order under Forney v. Apfel, 524 U.S. 266 (1998) and Sullivan v. Finkelstein, 496 U.S. 617 (1990). In addition, both the USDA and Kreider cite Forney as the basis for our jurisdiction in their briefs. Kreider also asserts various other grounds for jurisdiction in its letter. Both parties seem to recognize that Kreider never intended to file a cross-appeal from the District Court's 1998 Order.

II.

Even though Kreider and the USDA agree that we have jurisdiction over the appeals before us, it is well established that we have an independent duty to satisfy ourselves of our appellate jurisdiction regardless of the parties' positions. See, e.g., Collinsgru v. Palmyra Bd. of Ed., 161 F.3d 225, 229 (3d Cir. 1998). The District Court orders from which both Kreider and the USDA have appealed are orders remanding for further administrative proceedings. Normally, an order remanding for further proceedings is not a final order subject to immediate appellate review under 28 U.S.C. S 1291. See AJA Assocs. v. Army Corps of Eng'rs, 817 F.2d 1070, 1073 (3d Cir. 1987)(quoting United Steelworkers of Am., Local 1913 v. Union R.R. Co., 648 F.2d 905, 909 (3d Cir. 1981)). Naturally, however, this general rule is subject to several exceptions.3

A.

We traditionally have recognized an exception to the general finality rule for certain District Court orders remanding for further administrative proceedings. Specifically, we have exercised appellate review when a District Court finally resolves an important legal issue in reviewing an administrative agency action and denial of

_____

3. We refer to "exception" in its general sense that the order on appeal has not resolved all of the issues with respect to all of the parties. We agree with the concurrence that only Congress can set forth the jurisdiction of the federal courts.

appellate review before remand to the agency would foreclose appellate review as a practical matter. See AJA, 817 F.2d at 1073 (citing Horizons Int'l, Inc. v. Baldrige, 811 F.2d 154 (3d Cir. 1987)); Union R.R., 648 F.2d at 909.

An example of an immediately appealable remand under this exception is found in AJA, 817 F.2d 1070. After the Army Corps denied AJA's application for a permit, AJA filed suit in District Court. AJA, 817 F.2d at 1071–72. The District Court denied the Corps' motion for summary judgment and remanded holding that AJA was entitled to an administrative hearing. Id. at 1072. The Corps appealed.

We exercised jurisdiction over the Corps' appeal even though the District Court's order remanding for further administrative proceedings was not a final order. We noted that the District Court had resolved an important legal issue opening the door to arguments by all applicants that they are entitled to a hearing prior to a permit denial. Id. at 1073. In addition, we found that the issue may evade appellate review; if the Corps granted AJA a permit on remand, the Corps would be unable to appeal the hearing issue and if the Corps denied AJA a permit, the issue of whether AJA is entitled to a hearing would be moot. Id. For these reasons, we held that the Corps' appeal fell within our previously recognized exception to the finality rule.

B.

In addition to our well established exception to the finality rule for certain District Court orders remanding for further administrative proceedings, the Supreme Court recently carved out a very specific exception to the finality rule for remand orders under the Social Security Act. See Forney, 524 U.S. 266, and Finkelstein, 496 U.S. 617. In Finkelstein, the Court held that the District Court's order effectively holding that certain regulations were invalid and remanding for further administrative findings without resort to those regulations was immediately appealable. The Court relied heavily upon specific language within the Social Security Act in reaching this decision.4 The Court,

_____

4. Specifically, the Court found that a District Court's order remanding for further administrative proceedings under the Social Security Act is a

9

however, also noted that if benefits were awarded on remand under the inquiry mandated by the District Court "there would be grave doubt" as to whether the Secretary could appeal his own order. Finkelstein, 496 U.S. at 625.

As the Court's recent decision in Forney makes clear, however, the Finkelstein rationale is limited to the specific language found in the Social Security Act. In Forney, the Court held that not only can the Secretary appeal immediately an order remanding for further administrative proceedings, but that a claimant equally is entitled to appeal a District Court order remanding for further administrative proceedings. The Court reasoned that Finkelstein primarily was based on the language of the Social Security Act and that the reasoning in Finkelstein does not "permit an inference that `finality' turns on the order's importance, or the availability (or lack of availability) of an avenue for appeal from the different, later, agency determination that might emerge after remand." Forney, 524 U.S. at ___, 118 S. Ct. at 1987.

After Forney, it is clear that Finkelstein did not simply apply our general exception to finality to a social security case, but rather created a separate exception to thefinality rule based on the language of the Social Security Act. Accordingly, Forney cannot be read to extend appellate jurisdiction to all District Court orders remanding for further administrative proceedings as the parties contend, but rather speaks only to appellate jurisdiction under statutes containing language comparable to that found in the Social Security Act. This conclusion is supported by the

_____

final judgment subject to immediate appeal under the following language:

> [T]he district court shall have the power to enter `a judgment affirming, modifying, or reversing the decision of the Secretary,
with
> or without remanding the cause for rehearing.'

> *  *  *

> `[t]he judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.'

Finkelstein, 496 U.S. at 625 (emphasis in original).

10

fact that, to date, no court has applied Forney to a case not arising under the Social Security Act. As the USDA concedes, the AMAA does not contain language comparable to that found in the Social Security Act. Forney and Finkelstein therefore do not control our jurisdiction over these appeals.

C.

Given that Forney and Finkelstein do not control our jurisdiction over these appeals, we return to our general exception to the finality rule to determine whether we have jurisdiction over either of the appeals before us. Specifically, we must determine whether either the 1996 Order or 1998 Order finally resolves an important legal issue over which appellate review would be foreclosed as a practical matter in the absence of an immediate appeal.

In its 1996 Order, the District Court determined that the language relating to producer-handler status was ambiguous and that it was appropriate to resort to the promulgation history of the provision at issue. The District Court then remanded for further factual findings as to whether Kreider was the type of dairy the provision was meant to include. On remand, the ALJ determined that Kreider was not entitled to producer-handler status. This determination was subject to review by a JO and then by the District Court.

Under our exception to the finality rule, the 1996 Order is not subject to immediate appeal. It does notfinally resolve a particularly important legal issue and, more importantly, it is not an order that will evade appellate review. Absent an order that would evade review, our interest in avoiding piecemeal litigation and duplicative efforts overrides any interest we may have in entertaining the merits of Kreider's appeal at this juncture. Accordingly, our traditional exception to finality in agency proceedings does not afford us jurisdiction over Kreider's appeal from the 1996 Order.5

_____

5. At oral argument, the USDA asserted that if we intended to examine the merits of Kreider's appeal, the USDA could file a cross-appeal from

11

Our exception, however, does provide appellate jurisdiction over the USDA's timely appeal from the 1998 Order. This order vacated the JO's determination that Kreider's appeal was untimely and remanded for the JO to hear the merits of Kreider's appeal from the ALJ's decision. This decision resolves an issue of law that may evade review if immediate appeal is not permitted; should Kreider receive the relief it seeks on remand, it is doubtful that the USDA would be able to appeal its own decision in order to raise the procedural issues decided by the District Court in its 1998 Order. Therefore, under our exception for agency appeals, we have jurisdiction over the USDA's appeal from the 1998 Order.6

III.

Having established that we have jurisdiction over the USDA's appeal of the District Court's 1998 Order, we turn now to the merits of that appeal. The USDA asserts that the District Court erred in exercising jurisdiction over Kreider's appeal and in holding that Kreider's administrative appeal was timely. Because we agree that it was improper for the District Court to exercise jurisdiction over Kreider's appeal,

_____

the District Court's 1996 Order at this juncture to bring its position on the merits before us. Setting aside the obvious problems with the timeliness of such an appeal at this late date, we wish to make clear that because the District Court's 1996 Order is not afinal order over which we have appellate jurisdiction, the USDA is equally precluded from appealing the 1996 Order.

6. Our exception to the finality doctrine for agency appeals mirrors to a large extent the collateral order doctrine, which Kreider has raised as a possible basis for our jurisdiction over its appeal. Under the collateral order doctrine, an otherwise non-final order is immediately appealable if it finally and conclusively determines the disputed question, resolves an important issue separate from the underlying merits, and is effectively unreviewable after final judgment. See In re Tutu Wells Contamination Litig., 120 F.3d 368, 378 (3d Cir. 1997)(citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)). Under either exception to the finality rule, we have jurisdiction over the USDA's appeal but not Kreider's appeal. We likewise reject Kreider's other asserted grounds for our jurisdiction over its appeal as baseless.

12

we will vacate the District Court's 1998 Order without reaching the issue of whether Kreider's administrative appeal was timely.

After the District Court's initial remand via the 1996 Order, Kreider first filed a complaint in the District Court on February 2, 1998. In this complaint, Kreider sought review of the ALJ's August 12, 1997 decision on the merits. At that time, Kreider's motion for reconsideration of the JO's January 12, 1998 order, which dismissed Kreider's administrative appeal as untimely, was still pending. It is clear to us that the District Court did not have jurisdiction over Kreider's February 2, 1998 complaint.

First, as the District Court recognized, it did not have jurisdiction to review the ALJ's August 12, 1997 decision because that decision is not a final agency decision subject to judicial review. See Kreider, 1998 WL 481926 at *7. Second, even if Kreider's February 2, 1998 complaint had challenged the JO's January 12, 1998 decision, which it did not, the District Court would have lacked jurisdiction to review that decision at that time due to Kreider's pending motion for reconsideration. See Stone v. INS, 514 U.S. 386, 391 (1995)(noting the general rule that the timely filing of a motion to reconsider an agency's action generally renders the underlying order nonfinal for purposes of judicial review); West Penn Power Co. v. United States Envtl. Protection Agency, 860 F.2d 581, 584 (3d Cir. 1988) (same).7

Because the District Court lacked jurisdiction to entertain any appeal by Kreider on February 2, 1998, the date Kreider filed its first complaint, the District Court erred in exercising jurisdiction under the theory that Kreider's April 3, 1998 amended complaint related back to Kreider's February 2, 1998 complaint. An amended complaint that purports to relate back to an original complaint asserting an improper appeal which wasfiled on a date upon which the District Court would have lacked

_____

7. The courts have recognized a limited exception to this rule for immigration cases based upon language found in the Immigration and Naturalization Act. See Stone, 514 U.S. at 393–95. Because the AMAA contains no comparable language, this exception does not apply to Kreider's appeal.

13

jurisdiction over the appeal raised in the amended complaint, must be dismissed for lack of jurisdiction. See, e.g., Reynolds v. United States, 748 F.2d 291, 293 (5th Cir. 1984) (holding that District Court properly dismissed for lack of jurisdiction amended complaint that could only relate back to pleading filed on a date upon which the District Court would have lacked jurisdiction over the issues asserted). Absent a viable relation back theory, Kreider's April 3, 1998 complaint is an untimely appeal of the JO's January 12, 1998 decision.8 Accordingly, because the District Court lacked jurisdiction over Kreider's appeal of the JO's January 12, 1997 decision, we will vacate the District Court's 1998 Order.

IV.

For the foregoing reasons, we will dismiss summarily Kreider's cross-appeal from the District Court's 1998 Order (No. 98-1983), dismiss Kreider's appeal from the District Court's 1996 Order (No. 98-1982) for lack of jurisdiction, and vacate the judgment of the District Court in the USDA's appeal from the District Court's 1998 Order (No. 98-1906).

_____

8. Kreider does not dispute that its April 3, 1998 amended complaint was filed more than twenty days after the District Court's February 20, 1998 denial of Kreider's motion for reconsideration of the JO's January 12, 1998 decision and therefore is untimely absent a viable relation back theory. See 7 U.S.C. S 608c(15)(B)(1994).

14

SLOVITER, Circuit Judge, concurring.

I concur in the opinion of Judge Mansmann. I write separately to express my concern that our opinions, and those of other courts, dealing with the issue of appellate jurisdiction over district court orders remanding to an administrative agency have used language that is inconsistent with basic principles of federal jurisdiction. In particular, I take issue with language referring to our jurisdiction in that instance as an "exception" to the finality rule. See, e.g., Bridge v. United States Parole Commission, 981 F.2d 97, 101-02 (3d Cir. 1992); United States v. Spears, 859 F.2d 284, 287 (3d Cir. 1988); Perales v. Sullivan, 948 F.2d 1348, 1353 (2d Cir. 1348). In plain words, there can be no judicially created "exception" to the jurisdiction Congress has granted the courts of appeals.

I.

Any analysis of the jurisdiction of the courts of appeals must begin with the recognition that under our Constitutional separation of powers it is Congress that sets the jurisdiction of the federal courts, and the judiciary has no power to make exceptions to the congressional determinations in that respect. See United States v. Hollywood Motor Car Co., 458 U.S. 263, 264 (1982) (per curiam); see also 15A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure S 3905, at 232 (2d ed. 1991).

When Congress made its initial division of the jurisdiction between the federal trial courts and the appellate courts, it drew the line at final decisions. "The general principle of federal appellate jurisdiction, derived from the common law and enacted by the First Congress, requires that review of nisi prius proceedings await their termination by final judgment." DiBella v. United States, 369 U.S. 121, 124 (1962) (citing First Judiciary Act, SS 21, 22, 25, 1 Stat. 73, 83, 84, 85 (1789)); see also 15A Wright, Miller & Cooper, supra, S 3907, at 268 ("For two centuries,

15

the final judgment rule has been the heart of appellate jurisdiction in the federal system.").9

With few exceptions, that remains the touchstone today. The Supreme Court has explained that the final judgment rule discourages piecemeal appeals which carry with them the potential for harassment and excessive costs for litigants, see Cobbledick v. United States, 309 U.S. 323, 325-26 (1940); 15A Wright, Miller & Cooper, supra, S 3905, at 239, and protects the independence of the district judge, see Firestone, 449 U.S. at 374. The final judgment rule has survived because it is generally believed that it"promot[es] efficient judicial administration." Id. (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170 (1974)).

Over the years, Congress has made discrete decisions "that particular policies require that private rights be vindicable immediately." See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 880 n.7 (1994) (discussing provision for immediate appeal under 9 U.S.C. S 16(a) when district court declines to send case to commercial arbitrator). However, such a decision is always characterized by an express congressional judgment. See, e.g., 28 U.S.C. S 1292(a)(1) (authorizing appeal from interlocutory orders granting, modifying, denying etc. injunctions); 28 U.S.C. S 1292(b) (authorizing interlocutory appeal on certification). The Supreme Court has cautioned that the existence of those congressional policy judgments "by no means suggests that [the courts] should now be more ready to make similar judgments for themselves" and to expand the scope of appellate jurisdiction beyond that set by Congress. Digital Equip. Corp., 511 U.S. at 880 n.7.

II.

It follows that the references to "exceptions" to our statutorily authorized jurisdiction are misguided. Even the Supreme Court has no power to make an exception to the

_____

9. A final judgment is "a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373 (1981).

finality rule that does not have a statutory predicate. Nonetheless, opinions of the lower federal courts repeatedly refer to the collateral order "exception" emanating from the holding of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949), that the courts of appeals have jurisdiction over "a small class of orders" that, albeit not the final decision in the case, resolve important questions completely separate from the merits, which would be effectively unreviewable were they to wait appeal from the final judgment in the underlying action. The notion of an "exception" to the finality doctrine is illogical as Congress alone establishes our appellate jurisdiction.

The collateral order doctrine was hardly a new theory of finality never previously comprehended. More than two decades earlier, the Court stated that, althoughfinal judgments are the rule,

> it is well settled that an adjudication final in its nature as to a matter distinct from the general subject of the litigation and affecting only the parties to the particular controversy, may be reviewed without awaiting the determination of the general litigation.

United States v. River Rouge Improvement Co., 269 U.S. 411, 414 (1926).

A leading treatise observes that "[t]he most certain aspect of collateral order appeals is that they depend on 28 U.S.C. S 1291, and thus must be characterized as appeals from `final decisions.' " 15A Wright, Miller & Cooper, supra, S 3911, at 347; see also id. S 3911, at 349 (emphasizing that S 1291 "remains the only available foundation" for collateral orders doctrine). Indeed, the Supreme Court has repeatedly adopted the view that jurisdiction to hear an appeal from a collateral order falls within the authority conferred by S 1291.

In Johnson v. Fankell, 520 U.S. 911, 917 (1997), the Court stated: "In [Cohen], as in all of our cases following it, we were construing the federal statutory language of 28 U.S.C. S 1291." In his scholarly opinion in Digital Equipment Corp., Justice Souter explained that "[t]he collateral order doctrine is best understood not as an exception to the `final decision' rule laid down by Congress in S 1291, but as a

17

`practical construction' of it." 511 U.S. at 867. See also Firestone, 449 U.S. at 368 ("Cohen did not establish new law; rather, it continued a tradition of givingS 1291 a `practical rather than a technical construction.' "); Coopers & Lybrand, 437 U.S. 463, 468 (1978) ("[T]he Court held [the Cohen order] appealable as a `final decision' under S 1291."); Abney v. United States, 431 U.S. 651, 658 (1977) ("[T]his Court held [in Cohen] that the Court of Appeals had jurisdiction under S 1291 to entertain an appeal from the District Court's pretrial order." (emphasis added)).

I agree with the majority that the two cases arising under the Social Security Act, Sullivan v. Finkelstein, 496 U.S. 617 (1990), and Forney v. Apfel, 524 U.S. 266 (1998), represent an exception to the final judgment rule. But the exception is one made by Congress, not the courts.

In Finkelstein, the Court considered the jurisdiction of the courts of appeals to hear an appeal by the Secretary of Health and Human Services from a district court's order invalidating regulations issued by the Secretary and remanding to the agency for renewed consideration of the claim for benefits. The Court observed that the language of 42 U.S.C. S 405(g) in the Social Security Act permitted a district court to enter " `a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.' " Id. at 625 (quoting S 405(g)) (emphasis omitted). Further, S 405(g) made clear that such a judgment was " `final except that it shall be subject to review in the same manner as a judgment in other civil actions.' " Id. (quotingS 405(g)) (emphasis omitted). In light of this language, the Court concluded that Congress had "define[d] a class of orders as `final judgments' that by inference would be appealable under S 1291." Id. at 628. Justice Blackmun concurred, but stated he would have treated the appeal as falling within the confines of the collateral order doctrine. Id. at 632 (Blackmun, J., concurring).

The issue arose eight years later in Forney v. Apfel, 524 U.S. 266 (1998). There, it was an individual seeking benefits, rather than the government, who appealed the district court's decision following a remand to the agency under S 405(g). The Court rejected the collateral order

theory as the basis for appellate jurisdiction and emphasized, in a unanimous opinion, that Congress had created a class of orders through S 405(g) that were appealable as final orders under S 1291. Thus, because the district court decisions at issue in Finkelstein and Forney were a class of orders declared "final" by Congress by construction of the language of the Social Security Act, they provide little assistance on the issue facing us now, the appealability of an order remanding to an agency under a statute that has no comparable provision for appeal.

Of course, it would have facilitated our decision as to our appellate jurisdiction over an order remanding to an administrative agency if Congress had explicitly provided for such, and it may be that cases such as this will lead it to consider doing so. In any event, the precedent allowing such an appeal in appropriate circumstances, including that from this court, precludes any retreat now.

The most obvious analog, and the one relied on by many courts of appeals, is the collateral order doctrine, notwithstanding the fact that most of the agency remand orders would not qualify because the remand would rarely be on an issue separate from the merits. See 15B Wright, Miller & Cooper, supra, S 3914.32, at 240 (asserting that "[a]n impressive number of cases" permit appeal under the doctrine). It has been suggested that the tendency is to accept the appeals of government agencies, apparently because "administrative agencies, as more or less coordinate branches of government, deserve the protection of special appeal opportunities." Id. at 56–57 n.9 (Supp. 1999) (citing, inter alia, Bergerco Canada v. United States Treasury Dep't, 129 F.3d 189, 191–92 (D.C. Cir. 1997); Baca–Prieto v. Guigni, 95 F.3d 1006, 1008–09 (10th Cir. 1996); Hanauer v. Reich, 82 F.3d 1304, 1306–07 (4th Cir. 1996); Schuck v. Frank, 27 F.3d 194, 196–97 (6th Cir. 1994)). But see Cotton Petrol., Inc. v. United States Dep't of the Interior, 870 F.2d 1515, 1521–22 (10th Cir. 1989); AJA Assocs. v. Army Corps of Eng'rs, 817 F.2d 1070, 1072–73 (3d Cir. 1987)).

Wright, Miller, and Cooper have summarized the reasons courts rely on the collateral orders doctrine. In some circumstances, an agency may be statutorily barred from

19

appealing its own decision. In others, the agency's decision
will render the issue moot, because the agency has
complied with the district court's order. Additionally,
agencies ought not face the risk of contempt to prompt an
immediate appeal, or the danger that the agency will be
unable to recapture later any benefits paid in the interim.
See 15B Wright, Miller & Cooper, supra , S 3914.32, at 240-
41.

I agree that a practical construction of finality suffices to
justify review of an agency remand order in appropriate
cases. Such an approach is a considerable improvement
over viewing the basis of our jurisdiction as an"exception
to finality."

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit