**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2729
_____

IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/
DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION

PATTI KENNEDY, ACTING ON BEHALF OF THE ESTATE OF
DENNIS J. KENNEDY AND ACTING INDIVIDUALLY
AS THE SPOUSE OF DENNIS J. KENNEDY,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-99-cv-20593; 2-11-md-01203; 2-16-md-01203)
District Judge: Hon. Harvey Bartle, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 11, 2014

BEFORE: VANASKIE, GREENBERG and COWEN, <u>Circuit Judges</u>

(Filed: February 24, 2015)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

COWEN, Circuit Judge.

The Estate of Dennis J. Kennedy ("Estate") appeals from the order of the United States District Court for the Eastern District of Pennsylvania denying its claim for Matrix A benefits under the terms of the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement"). We will affirm.

I.

This case is part of an ongoing multi-district litigation concerning diet drugs called "Pondimin" and "Redux," which were previously sold by Wyeth.[1]  Under the Settlement Agreement, Wyeth was required to contribute funds to a trust for the payment of claims. The Settlement Trust ("Trust") reviews class members' claims to determine their eligibility for benefits.  "Matrix benefits" are based on two benefit matrices, which classify claimants pursuant to certain factors, including the presence of other medical conditions that may have caused or contributed to valvular heart disease.  For instance, Matrix A-1 describes the compensation available to claimants who do not have any of the alternative causes of valvular heart disease that made the B matrices applicable.  The B Matrix applies to claimants with a congenital bicuspid aortic valve.

Kennedy, a registered class member under the Settlement Agreement, underwent aortic valve surgery in 2007.  He died later that same year.  Patti Kennedy, the personal representative of the Estate, filed a claim for Matrix A benefits in 2011.  On the requisite "Green Form," Dr. Manoj Muttreja attested that Kennedy did not suffer from congenital

_____

[1]  Prior to March 11, 2002, Wyeth was known as American Home Products

2

aortic valve abnormalities. The Trust forwarded the claim to Dr. Rohit Parmar, one of its auditing cardiologists. Dr. Parmar found that there was no reasonable medical basis for Dr. Muttreja's representation concerning the absence of a congenital aortic valve abnormality. The Trust accordingly determined that the Estate was only entitled to Matrix B-1 benefits. After the Estate contested the post-audit determination, the auditing cardiologist again stated that there was no reasonable medical basis for the attesting physician's finding. The Trust issued a final post-audit determination denying Matrix A-1 benefits, and the Estate requested that the claim proceed to the show cause process established by the Settlement Agreement. The District Court issued an order to show cause and referred the matter to the Special Master for further proceedings. The Special Master allowed the Estate to submit a declaration signed by Dr. Paul Dlabal. The Special Master also asked a Technical Advisor, Dr. Gary Vigilante, to review the documentation and prepare a report. Like the auditing cardiologist, the Technical Advisor indicated that there was no reasonable medical basis for the attesting physician's finding that Kennedy did not have a congenital aortic valve abnormality.

On April 16, 2014, the District Court entered "Pretrial Order No. 9226." In this order, the District Court: (1) affirmed the Trust's final post-audit determination, denied the Matrix A claims submitted by the Estate and Patti Kennedy, and concluded that they were entitled only to Matrix B-1 benefits; (2) overruled the objections to the Special Master's order referring the claim to a Technical Advisor and denied the motion to close

Corporation.

3

the show cause record; and (3) denied the motion for inclusion of the contributions made by Dr. Muttreja and Dr. Dlabal to the Estate's response to the report of the Technical Advisor and overruled the objections to the Special Master's order.

## II.

"Once the Trust denies a claim and the claim advances to a show cause proceeding, the claimant has the burden of proving there was a reasonable medical basis for the attesting physician's representations."[2] In re Diet Drugs, 543 F.3d 179, 189 (3d Cir. 2008) (citing PTO 2457). According to the Estate, the District Court has failed to set forth a rule of law defining what exactly constitutes "a reasonable medical basis." The Estate asserts that deference should be given to the attesting physician's opinion, to opinions offered by physicians with higher levels of training, and to the observations of doctors who personally observed the aortic valve *in vivo*. It also contends that, "if an attesting physician finds that there is a reasonable medical basis to support the claim, the Trust must present some evidence in support of unreasonableness." (id. at 27 (citing Diet Drugs, 543 F.3d at 189).)

We agree with the Trust that the District Court has adequately articulated (and

___

[2] The District Court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

"We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." Diet Drugs, 543 F.3d at 184 n.10 (citing In re Cendant Corp. Prides Litig., 244 F.3d 188, 192 (3d Cir. 2000)). The district court commits an abuse of discretion if its decision rests on a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact. See, e.g., id.

4

applied) the standard or rule of law governing this "reasonable medical basis" determination. The Settlement Agreement authorizes the District Court to deny a claim "[i]f the Court determines that there was no reasonable medical basis to support a material representation made by a physician in support of a Claim." (JA962.) The District Court has applied this "reasonable medical basis" requirement in numerous cases, and it has done so in a consistent and conscientious fashion. In fact, we have repeatedly upheld its "reasonable medical basis" determinations on appeal. See, e.g., id. at 182-90. The Estate suggests that the Trust must put forth evidence to show that the physician's representation rises to the level of an act of medical malpractice. Such a drastic approach would essentially require the Trust and the District Court to approve every claim for benefits except in the most extreme circumstances. However, the District Court previously found that there was good cause to require auditing every Matrix claim. Likewise, it is the claimant's burden to prove the reasonableness of his or her claim in any subsequent show cause proceeding before the District Court. See, e.g., id. at 189. The District Court's ruling is then subject to review under this Court's deferential "abuse of discretion" standard.

The Estate argues at some length in its appellate briefing that the attesting physician, the supporting cardiologist, the treating cardiologists, Kennedy's surgeon, and even the auditing cardiologist "provided overwhelming evidence supporting a reasonable medical basis for the absence of a congenital bicuspid aortic valve." (Appellant's Brief at 26-27.) The District Court properly relied on the specific findings of the auditing

cardiologist and the Technical Advisor to dispose of the Estate's claim for Matrix A benefits.  The auditing cardiologist stated that "a bicuspid aortic valve" was "clearly seen" on the March 28, 2007 echocardiogram.  (JA3071.)  The Technical Advisor then explained in some detail why the February 7, 2002, the March 5, 2007, and the March 28, 2007 echocardiograms indicated the existence of a congenital bicuspid aortic valve.  In the process, he specifically addressed Dr. Dlabal's declaration and took into consideration the observations of the doctor who performed the aortic valve surgery.  Given the record, we cannot conclude that the District Court committed an abuse of discretion in holding that the Estate failed to prove a reasonable medical basis for the attesting physician's finding regarding the absence of a congenital aortic valve abnormality.  See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 320 (3d Cir. 2001) ("'The test is not what this court would have done under the same circumstances; that is not enough.  The court must feel that only one order could have been entered on the facts.'" (citation omitted)).

Finally, neither the District Court nor the Special Master violated the terms of the Settlement Agreement, the Audit Rules, or the Due Process Clause of the Fifth Amendment by precluding the Estate from including verified rebuttals from Dr. Muttreja and Dr. Dlabal in its response to Dr. Vigilante's report.  The Estate claims that it had the right to offer expert rebuttals to the report prepared by the Technical Advisor (which purportedly injected new testimony and facts into this case).  While Audit Rule 18(b) permits the claimant to submit a verified statement of a medical expert at the contest stage

6

before the Trust (and Audit Rule 26 authorizes the Special Master to allow the claimant to submit a medical report with the response to the Trust's show cause statement), Audit Rule 34 provides that both the Trust and the claimant may submit a response to the Technical Advisor's report "not exceeding five pages in length"—which "may address only the findings of the Technical Advisor and shall be limited to the evidence already in the Special Master Record" (JA1455).  The Audit Rules are meant "to curtail protracted, unending submission of expert opinions in the show cause process."  (Appellee's Brief at 37 (citing JA1447, JA1452).)  However, the procedures still provide the claimant with ample and meaningful opportunities to be heard.  See, e.g., AJA Assocs. v. Army Corps of Eng'rs, 817 F.2d 1070, 1073 (3d Cir. 1987) ("'The fundamental requirement of due process is the *opportunity* to be heard "at a meaningful time and in a meaningful manner."'" (citations omitted)).  In fact, the Special Master allowed the Estate to file a declaration from Dr. Dlabal in this show cause proceeding.

III.

For the foregoing reasons, we will affirm the order of the District Court.